IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | Case No: 21-CR-175-4 (TJK) |
| : | |
| **CHARLES DONOHOE,** : | |
| : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF PRE-TRIAL DETENTION

The indictment in this case makes clear that Charles Donohoe and his co-defendants were heavily involved in planning, organizing, and leading members of the Proud Boys organization before, during, and after their participation in the January 6 attack. Donohoe and his co-defendants took command of the group, advanced with them onto Capitol grounds, and took specific actions to interfere with law enforcement, all while endeavoring to stop Congress's certification of the results of the 2020 U.S. presidential election.

The evidence in this case is strong, and the nature and circumstances of this crime are unprecedented in this country's history. As alleged in the indictment, Donohoe played a direct role in unleashing violence on the Capitol. After the attack, he celebrated, declaring in Telegram messages that January 6 made him "feel like a complete warrior" and he celebrated that "We stormed the capitol unarmed […] And we took it over unarmed." Although the government does not currently have evidence that Donohoe actually entered the Capitol building on January 6, these statements in celebration of the accomplishments of the group underscore the danger of a man like Donohoe—a person who had the ability to organize and command a group of men to further a criminal conspiracy.

As explained herein, the charges against the Defendant give rise to a rebuttable presumption in favor of detention. Pre-trial release would allow the Defendant to remain in the same circumstances in which he and others planned and launched the attack on January 6. For someone who commands influence over a group with a demonstrated desire for violence, even home detention does little to protect the community. Moreover, the Defendant's repeated efforts to destroy electronic evidence reveal plainly the Defendant's knowledge of his and others' culpability and his intent and efforts to obstruct the due administration of justice in this case. Accordingly, because no condition or combination of conditions will reasonably assure the safety of the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the Defendant.

## Procedural Background

On March 10, 2021, a grand jury in the District of Columbia returned a six-count superseding indictment charging Donohoe and three others, Ethan Nordean, Joseph Biggs, and Zachary Rehl (collectively, "the defendants"), in connection with the January 6 attack. Each defendant is charged with conspiracy, in violation of 18 U.S.C. § 371; obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c), 2; obstruction of law enforcement during a civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3), 2; destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361, 2; and unlawful entry and disorderly conduct, in violation of 18 U.S.C. § 1752(a)(1) and (a)(2).

On March 17, 2021, Donohoe was arrested in the Middle District of North Carolina pursuant to a warrant issued in connection with the indictment. The Defendant was presented before a magistrate judge in that district on March 17, 2021, and he waived his right to an identity

hearing. The Defendant also waived his right to a detention hearing in the district where he was arrested and instead seeks a hearing before a judge in the District of Columbia.[1]

### Factual Background

At a detention hearing, the government may present evidence by way of a proffer. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

As alleged in the indictment, which is incorporated here by reference, the Defendant took personal control over efforts to plan for the January 6 event. Shortly after the arrest of the Proud Boys chairman on January 4, Donohoe took the initiative to create new Telegram chat groups out of concern that the secrecy of earlier communications with the Proud Boys chairman and others had been compromised because law enforcement had seized the Proud Boys chairman's phone. Donohoe directed others to leave the earlier chats so that the previous chats could be "nuked." Donohoe subsequently relayed a message that he said was "from the top" in which Donohoe directed: "Hey have been instructed and listen to me real good! There is no planning of any sorts. I need to be put into whatever new thing is created. Everything is compromised and we can be looking at Gang charges[.]"

Planning for January 6 ultimately did resume, and the group was advised that the plans for January 6 would continue. Donohoe used the Telegram messaging groups that he and other leadership had created to communicate plans and directives. Like his co-defendants, he emphasized that there were to be "no colors" worn by the Proud Boys in Washington, D.C. The

---

[1] Defendants Nordean and Biggs had been previously charged and arrested. Although they are currently released on conditions, the government has moved for their pre-trial detention after the unsealing of the March 10 indictment. Like the Defendant in this case, co-defendant Rehl was arrested on March 17, 2021, and the government is seeking his pre-trial detention as well.

night before January 6, Donohoe repeated, verbatim, a series of instructions to the members of the Telegram group, referring to co-defendant Nordean by his alias, "Rufio":

> Stand by for the shared baofeng channel and shared zello channel, no colors, be decentralized and use good judgement until further orders [. . .]  Rufio is in charge, cops are the primary threat, don't get caught by them or BLM, don't get drunk until off the street [. . .] 477.985 freq

Donohoe later repeated a message that advised those attending the rally in D.C. exactly where they were to meet on the morning of January 6. As with others who had posted the message, Donohoe reiterated that the "details" would be "laid out at the pre meeting":

> Everyone needs to meet at the Washington Monument at 10am tomorrow morning! Do not be late! Do not wear colors! Details will be laid out at the pre meeting! Come out at as patriot! We will be meeting inside the ropes of the monument on the side facing the whitehouse.

On the morning of January 6, the Defendant arrived early at the Washington Monument. Defendant told others that he "had the keys" until co-defendants Nordean and Rehl arrived. The group then marched to the east side of the Capitol building before returning to the west side, where, shortly before 1:00 p.m. they gathered near a pedestrian entrance to the restricted Capitol grounds. Within minutes of arriving at the pedestrian entrance, the crowd overwhelmed law enforcement and trampled the first sets of barriers. Shortly after the initial breach, an unindicted co-conspirator declared on one of the Telegram channels: "Storming the capital [sic] building right now!!" and "Get there[.]"

Indeed, Donohoe advanced past the trampled barriers and into the Capitol's restricted perimeter. Like his co-defendants, Donohoe made his way to the front of the group and stood opposite the retreating Capitol Police officers. As additional barriers came down, Donohoe and others continued to advance into the west plaza of the Capitol. And Donohoe's efforts did not stop there—he took direct action to facilitate his co-conspirators' assault on the building itself.

4

Specifically, after Proud Boys member Dominic Pezzola robbed a Capitol Police officer of his riot shield, Donohoe was captured on video carrying the riot shield with Pezzola. Around the same time, Donohoe relayed the news to those on the Telegram message group, writing, "Got a riot shield!"

  

Shortly thereafter, when rioters made a final push up the stairs to reach the Capitol, Donohoe was there. He, along with Proud Boys members and other rioters, took action to overwhelm law enforcement, with the goal of advancing up the stairs to the west terrace of the Capitol building. That action ultimately allowed Proud Boys member Pezzola to advance toward the Senate side of the Capitol, where, at approximately 2:13 p.m., Pezzola used the riot shield to break a large window. This action allowed the mob of rioters, including Donohoe's co-defendants,

to enter the Capitol and further obstruct the proceedings inside.[2] Indeed, at 2:19 p.m., a member of the Telegram chats announced, "We just stormed the capital" [sic].

Donohoe's intent to create mayhem and disrupt the proceedings at the Capitol continued well after the initial breach into the restricted grounds and up to the west terrace. Indeed, at 3:38 p.m., more than an hour after Pezzola and others had broken into the building, Donohoe indicated that he had left the Capitol grounds, but then announced over Telegram, "We are regrouping with a second force." That plan appears to have been short-lived, as Donohoe subsequently advised the group that the National Guard and "DHS agents" were "incoming."

After the storming of the Capitol, Donohoe rejoiced, telling his fellow Proud Boys over Telegram, "I stood on that front line the entire time and pushed it twice[.]" He also proudly declared in messages after the attack that such actions made him "feel like a complete warrior." He celebrated the group's accomplishments, noting "We stormed the capitol unarmed […] And we took it over unarmed."

In the wake of the January 6 attack, as criminal charges against Proud Boys members and others mounted, Donohoe responded as he had when the Proud Boys chairman was arrested—with concern about covering his and others' tracks. As the creator of several of the Telegram groups that had been used in planning the attack, Donohoe asked others, "Want me to nuke it?" He was directed to do so. About ten minutes later, Donohoe was told, "That didn't nuke it lol" and then "you gotta nuke it." A few minutes later, Donohoe wrote, "Hmmm".

---

[2] Pezzola was previously charged for his role in the January 6 attack. *United States v. Pezzola*, 1:21-cr-52 (D.D.C.).

**Relevant Legal Principles**

Under the Bail Reform Act, courts consider the following factors in determining whether some condition, or combination of conditions, will reasonably assure community safety or the defendant's appearance at trial and pre-trial proceedings: the nature and circumstances of the charged offenses; the weight of the evidence against the defendant; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *Smith*, 79 F.3d at 1209.

The United States seeks detention pursuant to, *inter alia*, 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption of detention if there is probable cause to believe that the defendant committed "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." That rebuttable presumption applies to Donohoe because destruction of government property in violation of 18 U.S.C. § 1361, is specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B), and it carries a maximum sentence of ten years in prison.[3]

In addition to establishing a rebuttable presumption, the destruction of government property charge independently provides a basis for a detention hearing under 18 U.S.C. § 3142(f)(1)(A), because the offense is a "crime of violence." For purposes of the bail statute, as

---

[3] Judges in this district have uniformly held in Capitol riot cases that 18 U.S.C. § 3142(e)(3)(C)'s rebuttable presumption applies to defendants charged under 18 U.S.C. § 1361. *See, e.g.*, *United States v. Nordean*, Case No. 21-mj-195 (C.J. Howell, March 3, 2021); *United States v. Powell*, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); *United States v. Watkins*, Case No. 21-cr-28 (J. Mehta, February 26, 2021); *United States v. Bisgnano*, Case No. 21-cr-36 (J. Nichols, February 26, 2021).

relevant here, a crime of violence is defined as "an offense that has an element of the use, attempted use, or threatened use of physical force against the person or property of another," if that crime is punishable by ten years or more in prison. *See* 18 U.S.C. § 3142(f)(1)(A) & 3156. *United States v. Khatallah*, 316 F. Supp. 2d 207, 213 (D.D.C. 2018) (Cooper, J.) (holding that destruction of government property under a substantially similar statute, 18 U.S.C. § 1363, satisfies a substantially similar elements-clause statute to qualify as a crime of violence). Moreover, when destruction of government property is "calculated to influence or affect the conduct of government by intimidation or coercion," it qualifies as a federal crime of terrorism. *See* 18 U.S.C. § 2332b(g)(5).

Finally, the Defendant's efforts to destroy or "nuke" encrypted chats provide a third basis for detention, as they illustrate the serious risk that the Defendant will attempt to obstruct justice. *See* 18 U.S.C. § 3142(f)(2)(B).

## ARGUMENT

### 1. Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses charged in this case strongly support detention. The Defendant is charged by indictment with serious crimes that occurred during an unprecedented attack on the U.S. Capitol that obstructed Congress's certification of the 2020 U.S. presidential election results. Indeed, the Defendant was heavily involved in the planning and organization of the activities and he took a direct role in leading the group's efforts to "storm the capitol."

The government does not allege that the Defendant acted as a principal in the destruction of government property. However, the Defendant and his co-conspirators are rightly criminally responsible for the actions taken by others that were foreseeable and in furtherance of a conspiracy and those that they aided and abetted. *See Pinkerton v. United States*, 328 U.S. 640, 647 (1946).

8

In this case, Pezzola furthered the conspiracy by stealing a riot shield. Donohoe then assisted Pezzola in carrying the shield through the west plaza, and Donohoe boasted about Pezzola's accomplishment on Telegram: "Got a riot shield!" Donohoe's words and actions plainly embrace the conduct of Pezzola as acts taken in furtherance of the conspiracy. After the theft of the shield, Donohoe directly assisted in Proud Boys members' and others' push up the stairway to the terrace of the Capitol. This action enabled Pezzola and others to advance to the façade of the building and take action to enter it.

Because the Defendant and Pezzola conspired together (and with others), the Defendant is substantively liable for the destruction Pezzola wrought with his stolen riot shield—even if the two are not charged in the same conspiracy. *See United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) ("a conspiracy need not be charged in order for *Pinkerton*'s doctrine to apply"). Likewise, the Defendant is substantively liable because he aided and abetted Pezzola's property destruction. *See United States v. Whitted*, 734 F. App'x 90, 95 n.4 (3d Cir. 2018) (unpublished) (explaining that "*Pinkerton* and aiding and abetting are two alternative theories under which the government may prove a substantive criminal offense").

### 2. The Weight of the Evidence

The weight of the evidence against the Defendant is strong, and it weighs in favor of pretrial detention. This evidence comes in multiple forms, including the photographs and videos of the Defendant and co-conspirators at the Capitol on January 6, posts and direct messages on social media, and the messages sent and received through Telegram. Together, this evidence paints a clear picture: the Defendant was instrumental in planning and leading the attack on the Capitol by Proud Boys members. When it came time to act, the Defendant did so without hesitation—advancing past barriers and joining in efforts to push past law enforcement. During and after the attack, the Defendant celebrated his and others' actions in storming the Capitol. It made Donohoe

"feel like a complete warrior." And, with accountability looming, the Defendant took action to cover his tracks, trying—in vain—to "nuke" the messages by which the plan was launched.

### 3. The History and Characteristics of the Defendant

The Defendant has served this country as a member of the United States Marine Corps. But the Defendant's more recent actions—taken against our institutions of government and democracy itself—raise significant concerns that weigh in favor of detention. Critically, the government is unaware of any expression of remorse or contrition by the Defendant or any attempt by the Defendant to distance himself from the violent conduct of those in his command.

As the Chief Judge in the District of Columbia noted with regard to another Proud Boys member, who in fact marched with the Defendant on January 6, and whom the Chief Judge ordered detained:

> [H]is more recent behavior surrounding the events January 6 gives rise to significant concerns about the danger he may present to the community. As explained above, the extent of his involvement in the mob clearly poses a danger. In addition, in the nearly two months that have passed since January 6, defendant has not exhibited any remorse for what occurred at the Capitol. Nothing in the record suggests that he has any remorse about the events of January 6 or disclaimed the beliefs and gang membership animating his actions on that day, and thus there is no evidentiary basis to assume that defendant will refrain from similar activities, if instructed, in the future.

*United States v. Chrestman*, 21-mj-218 (D.D.C.) (ECF 23, at 27-28). Likewise, the Defendant has shown no remorse and has not disclaimed "the beliefs and gang membership animating his actions that day." *Id.* On the contrary, as noted above, he has expressed pride in what he and his co-conspirators achieved on January 6. Accordingly, there is every reason to believe that the views expressed by the Defendant regarding January 6 would animate similar conduct in the future.

### 4. The Nature and Seriousness of the Danger Posed by Release

Allowing the Defendant to be released pending trial, even in home confinement, would leave a man who has the wherewithal to help plan and lead a large group of men in a violent attack

10

to take similar actions in the future. Indeed, he poses the same risk of danger to others and the community that he posed leading up to and on January 6. He should therefore be detained.

## CONCLUSION

When all these factors are viewed in light of the substantial sentence Defendant faces if convicted, it is clear that the Defendant cannot rebut the presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(C). Even if he could, there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released, even to home confinement.

WHEREFORE, the government respectfully submits that its motion for pretrial detention should be granted and the Defendant ordered detained pending trial in the District of Columbia.

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:  /s/ Jason McCullough
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
JAMES B. NELSON
D.C. Bar No. 1613700
LUKE M. JONES
VA Bar No. 75053
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7233
jason.mccullough2@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on March 26, 2021, and by email to Shelli Peterson (FPD) and Lisa Costner (Defendant's counsel of record in the proceedings in North Carolina).

By: /s/ Jason McCullough
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7233
jason.mccullough2@usdoj.gov