IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) No. 3:20-cr-00465-JO |
| | ) |
| v. | ) |
| | ) |
| KEVIN PHOMMA, | ) **OPINION AND ORDER** |
| | ) |
| | ) |
| Defendant. | ) |

Defendant Kevin Phomma is charged with committing civil disorder in violation of 18 U.S.C. § 231(a)(3) by obstructing, impeding, and interfering with law enforcement officers on August 26, 2020, during a protest at the Immigration and Customs Enforcement (ICE) building on Macadam Avenue in Portland. Defendant now moves to dismiss the indictment, contending that § 231(a)(3) violates the Commerce Clause, the First Amendment, and the Fifth Amendment. Defendant also contends that the indictment does not give him the notice required by the Fifth Amendment. For the following reasons, I deny Defendant's Motion to Dismiss.

## BACKGROUND

The indictment charges Defendant with violating § 231(a)(3), which is part of the Civil Obedience Act of 1968. The indictment alleges:

1  - Opinion and Order

> On or about August 26, 2020, in the District of Oregon, during a civil disorder, defendant KEVIN PHOMMA, knowingly committed a violent act for the intended purpose of obstructing, impeding and interfering with law enforcement officers who were lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder, and that such civil disorder in any way or degree obstructed, delayed and adversely affected commerce and the movement of any article or commodity in commerce . . . .

Indictment, ECF No. 9. The affidavit supporting the criminal complaint against Defendant contains detailed allegations about Defendant's conduct and the circumstances of his arrest. ECF Nos. 1 (Complaint) and 2 (supporting affidavit).

The parties have submitted additional background information about the charge against Defendant. Defendant states in his Motion to Dismiss that on August 26, 2020, he "was involved in the protest against racial injustice at the Immigration and Customs Enforcement (ICE) building located at 4310 S.W. Macadam Avenue, Portland." ECF No. 18, at 18. Defendant states that Portland Police officers arrested him at the protest "and charged him with misdemeanor offenses alleging Interfering with a Peace Officer, Disorderly Conduct, Harassment, and Use of Pepper Spray." *Id.* Defendant also states that an indictment against him in Multnomah County Circuit Court alleges "Assaulting a Public Safety Officer, Unlawful Use of Deleterious Agent in the First Degree (three counts), Riot, Interfering with a Peace, Parole or Probation Officer, and Disorderly Conduct in the Second Degree." *Id.* The state charges against Defendant, which are based on "the same conduct as alleged in the federal indictment," are pending. Def.'s Unopposed Mot. Continue Trial 1, ECF No. 35.

According to the government, on the night of August 26, Defendant "sprayed several Portland Police Officers with bear spray. The officers were wearing gas masks, but one officer noted that his neck and arms 'started to burn.' When he and the others

removed their gas masks, their faces felt the same burning sensation." Gov't Resp. 5, ECF No. 24. The government states that "protesters filled the street, making passage by cars or delivery vehicles impossible." Gov't Resp. 5-6.

## LEGAL STANDARD

This court is "bound by the four corners of the indictment" when "ruling on a pre-trial motion to dismiss an indictment for failure to state an offense." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The court "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Id.* A motion to dismiss the indictment is not "a device for a summary trial of the evidence." *Id.* The court may resolve a motion to dismiss an indictment before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986).

## DISCUSSION

### I. Defendant's Constitutional Challenges to the Civil Disorder Statute

Section 231(a)(3) provides,

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or performance of any federally protected function--
>
> Shall be fined under this title or imprisoned not more than five years, or both.

The statute defines "civil disorder" as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

The parties have not cited, and I have not found, a Ninth Circuit decision construing § 231(a)(3). *Cf. Nat'l Mobilization Comm. to End the War in Viet Nam v. Foran*, 411 F.2d 934,

937 (7th Cir. 1969); *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976); *United States v. Mechanic*, 454 F.2d 849, 854 (8th Cir. 1971). Recently, several district courts have addressed challenges to the statute similar to those raised by Defendant here, including *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632, at *16-*20 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021); *United States v. Pugh*, No. 1:20-cr-73-TFM, slip op. (S.D. Ala. May 13, 2021) (copy submitted by the government here); *United States v. Wood*, No. 20-cr-56 MN, 2021 WL 3048448 (D. Del. July 20, 2021); and *United States v. Howard*, No. 21-cr-28-pp, 2021 WL 3856290 (E.D. Wis. Aug. 30, 2021). I have found these recent district court decisions helpful in resolving the issues here.

## A. Commerce Clause

The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Defendant argues that § 231(a)(3) exceeds Congress's authority under the Commerce Clause and intrudes into the States' role in law enforcement because the statute applies to purely local conduct and requires only an attenuated connection to interstate commerce. The government responds that the statute is within Congress's Commerce Clause authority to protect the flow of interstate commerce from improper interference caused by a civil disorder.

Defendant cites two Supreme Court decisions that struck down federal statutes for regulating non-economic activity unconnected to interstate commerce: *United States v. Morrison*, 529 U.S. 598 (2000), which struck down portions of the Violence Against Women Act; and *United States v. Lopez*, 514 U.S. 549 (1995), which struck down the Gun-Free School Zones Act prohibiting firearm possession in school zones. *Lopez* outlined three categories of activity that Congress may regulate under the Commerce Clause: (1) channels of interstate

commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558-59. Here, I focus on the third category, activities that substantially affect interstate commerce. The Court in *Morrison* identified four factors to consider when determining whether a regulated activity substantially affects interstate commerce: (1) whether Congress made findings regarding the regulated activity's impact on interstate commerce; (2) whether the statute contains an "express jurisdictional element" that limits its reach; (3) whether the regulated activity is commercial or economic in nature; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated. *Morrison*, 529 U.S. at 610-12.

I conclude that § 231(a)(3) is within Congress's Commerce Clause authority because the statute includes an express jurisdictional element, requiring that the defendant's obstruction or interference with a law enforcement officer or firefighter must occur "during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce." 18 U.S.C. § 231(a)(3). The Ninth Circuit has upheld statutes that contain similar jurisdictional elements. For example, the court upheld an amended statute banning guns in school zones because the amended version required that the firearm had traveled in interstate commerce. *United States v. Dorsey*, 418 F.3d 1038, 1045-46 (9th Cir. 2005), *abrogated on other grounds*, *Arizona v. Gant*, 556 U.S. 332 (2009). "This new version of § 922(q) resolves the shortcomings that the *Lopez* Court found in the prior version of this statute because it incorporates a 'jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce.' This jurisdictional element saves § 922(q) from the infirmity that defeated it in *Lopez*." *Dorsey*, 418 F.3d at 1046 (quoting *Lopez*, 514 U.S. at 561).

5   - Opinion and Order

Here, Defendant has not cited any decision that struck down a statute on Commerce Clause grounds when the statute contained an express jurisdictional element linking the prohibited conduct to interstate commerce. *See Wood*, 2021 WL 3048448, at *6 (the defendant "failed to cite any case in which a statute with an explicit jurisdictional hook was invalidated based on the Commerce Clause, nor has this Court found one in its own independent research"); *Pugh*, at *9 ("courts have held that despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element"). Turning specifically to § 231(a)(3), the court in *Howard* held "[p]roof that the underlying civil disturbance affected interstate commerce is a sufficient jurisdictional hook for Congress to proscribe conduct that stands to exacerbate or aggravate such disorder." 2021 WL 3856290, at *10 (quoting magistrate judge's Report and Recommendation). The court in *Wood* explained that that the jurisdictional element of § 231(a)(3) limited the statute's reach by requiring that the government prove (1) a civil disorder that affects commerce; (2) law enforcement officers who are lawfully performing their duties incident to or during the civil disorder; and (3) the defendant commits or attempts to commit "an act to obstruct, impede of interfere with the performance of those duties." 2021 WL 3048448, at *6; *see also Pugh*, at 9-10 (addressing Commerce Clause issue). I agree with *Wood* and *Howard* that § 231(a)(3) does not exceed Congress's power under the Commerce Clause because of the explicit jurisdictional link to civil disorders that affect commerce.

Defendant argues that § 231(a)(3) effectively "criminalizes 'any act' that interferes with a state officer, incident to a disturbance involving three or more people, that 'in any way or degree' affects commerce," therefore addressing "a quintessentially local crime." Def.'s Reply 14, ECF No. 28. As the government acknowledges, the statutory jurisdictional element must be

6   - Opinion and Order

substantive and not included just to ward off Commerce Clause challenges. Gov't Resp. 10 (citing *United States v. Alderman*, 565 F.3d 641, 648 (9th Cir. 2009)). Here, § 231(a)(3)'s jurisdictional element is valid because it limits the statute's application to conduct occurring during civil disturbances that affect interstate commerce, such as by blocking streets or preventing use of commercial or government buildings for extended periods of time.

Defendant argues that § 231(a)(3) "criminalizes obstruction, interference, and impeding state officers, with no direct connection to commerce or economic activity." Def.'s Mot. Dis. 13. In *Howard*, the court addressed a similar argument:

> A defendant may be convicted of violating the statute only if the civil disorder during which the law enforcement officers are lawfully performing their lawful duties obstructs, delays or affects interstate commerce. [As the magistrate judge] implied, this means that the officers are, among other things, attempting to quell an interference with interstate commerce. When a person deliberately commits some act to obstruct, impede or interfere with those officers, that person is impacting interstate commerce. That person is trying to prevent, or is preventing, the officer from performing duties which include the protection of interstate commerce. The person may not know that that is what he is doing, any more than a defendant who commits a Hobbs Act robbery knows that he is interfering with interstate commerce, or a felon who possesses a gun that previously has traveled in interstate commerce knows that he is committing a federal offense. But the person's act of attempting to obstruct or obstructing the law enforcement officer does impact interstate commerce, by preventing the officer from protecting interstate commerce.

2021 WL 3856290, at *10. As the government argues, "an individual can be charged under Section 213(a)(3) only if he or she impedes or attempts to impede police or firefighters--the very public safety professionals charged with containing, mitigating, and ultimately ending the public disturbance, and thereby restoring the channels and instrumentalities of interstate commerce." Gov't Resp. 10. I conclude that § 231(a)(3) does not exceed Congress's power under the Commerce Clause because of the explicit jurisdictional link to civil disorders that affect interstate commerce.

7  - Opinion and Order

Finally, even if this court were to conclude that § 231(a)(3) runs afoul of the Commerce Clause, the government could seek a superseding indictment because the statute also applies when there is "a civil disorder which in any way or degree obstructs, delays, or adversely affects . . . *performance of any federally protected function*." 18 U.S.C. § 231(a)(3) (emphasis added). The statute defines "federally protected function" as "any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails." 18 U.S.C. § 232(3). This provision of § 231(a)(3) would apply here, because the protest on August 26, 2020 was allegedly blocking access to the ICE facility, and Defendant was arrested during that protest.

## B. First Amendment

Defendant contends that § 231(a)(3) violates the First Amendment because it is overbroad, potentially criminalizing protected "expressive conduct and speech directed at officers during a demonstration: shouting harsh or derogatory words; failing to move out of the way; waving signs that block sight lines; picketing in front of law enforcement buildings; recording police conduct; advocating for the police to be defunded." Def.'s Brief in Resp. 7, ECF No. 34. Defendant also contends that § 231(a)(3) violates the First Amendment because Congress enacted it for "the impermissible purpose of punishing and chilling viewpoints of the civil rights movement." Def.'s Reply 22, ECF No. 28.

### 1. Overbreadth

The First Amendment's "guarantees of free speech and free press" protect "advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg*

*v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam). The court may strike down a statute as overbroad under the First Amendment "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, ___ U.S. ___, 141 S. Ct. 2373, 2387 (2021) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). "'Invalidation for overbreadth is strong medicine that is not to be casually employed.'" *United States v. Rundo*, 990 F.3d 709, 713-14 (9th Cir. 2021) (per curiam) (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). The court should construe the challenged statute as constitutional "if [it] reasonably can do so." *Id.* at 714. The defendant has the burden of establishing that the challenged statute "is substantially overbroad." *Id.* at 713.

In determining whether a statute is overbroad, the court first construes the provisions of the statute in question. *Id.* Section 231(a)(3) provides,

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or performance of any federally protected function--

The statute applies to persons who commit or attempt to commit "any act to obstruct, impede, or interfere" with law enforcement or firefighters. The words "any act" imply that the statute is directed towards conduct rather than speech. As the court in *Howard* explained,

> The language of § 231 targets *conduct*, specifically conduct that obstructs, impedes, or interferes with law enforcement officers lawfully engaged in the lawful performance of their duties during a civil disorder that negatively impacts interstate commerce. The fact that there could be a circumstance in which the government could charge someone whose *act* constituted a form of speech or

9   - Opinion and Order

>expression does not render § 231(a)(3) unconstitutional on its face. The case law makes clear that to violate the First Amendment on its face, a statute must reach "a substantial amount of constitutional protected conduct."

*Howard*, 2021 WL 3856290, at *11 (quoting *City of Houston v. Hill*, 482 U.S. 451, 458 (1987)). By referring to "any" act, the statute reaches non-violent and violent conduct. See *Wood*, 2021 WL 3048448, at *7 (§ 231(a)(3) applies to "*any act* to obstruct, impede, or interfere," so the act "need only be one that obstructs, impedes, or interferes with law enforcement engaged in the performance of duties incident to and during a civil disorder"); *Pugh*, at *13 (accord); *but see United States v. Mechanic*, 454 F.2d 849, 852 (8th Cir. 1971) (§ 231(a)(3) "applies only to violent physical acts"). However, as the court in *Wood* stated, "it may be likely that violent conduct will be at issue with a defendant charged under the statute." 2021 WL 3048448, at *7. I note that the recent district court decisions cited here concern allegations of violent conduct. For example, Defendant here allegedly sprayed police officers with bear spray; in *Wood*, the defendant allegedly threw brick that shattered the back window of a police vehicle; in *Pugh*, the defendant allegedly used a baseball bat to break out the window of a police cruiser; and in *Howard*, the defendant allegedly threw an object at a police officer, hitting the officer in the head and knocking him unconscious. *Wood*, 2021 WL 3048448, at *1; *Pugh*, at *2; *Howard*, 2021 WL 3856290, at *2. I conclude that the statute is targeted primarily if not exclusively at conduct, whether violent or not, rather than speech.

Defendant has not cited any prosecutions under § 231(a)(3) that involved protected speech, but rather provides only hypothetical situations. As noted, when a defendant presents a facial challenge to a statute as overbroad, the defendant must show that the statute reaches a "substantial amount of constitutionally protected conduct." *Hill*, 482 U.S. at 458. The Supreme Court has explained that "[t]he mere fact that one can conceive of some impermissible

10 - Opinion and Order

applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Here, Defendant has failed to make the required showing to strike down § 231(a)(3) as overbroad. *See Wood*, 2021 WL 3048448, at *8 (because "[n]othing in § 231(a)(3) prohibits peaceful expression or association," the statute is not overbroad).

### 2. Content-Based

Defendant contends that § 231(a)(3) should be subject to strict scrutiny because Congress enacted the statute with the intent to suppress the viewpoints of civil rights leaders. Defendant has submitted legislative history that includes senators' statements castigating African-American civil rights leaders by name, including Martin Luther King, Jr., Stokely Carmichael, and H. Rap Brown. However, I find that the statute itself is content-neutral on its face. Over the past fifty years, the statute has been applied to civil disorders across the political spectrum, including the recent riots on January 6, 2021 in Washington, D.C. *See, e.g., United States v. Sabol*, ___ F. Supp. 3d ___, 2021 WL 1405945 (D. D.C. April 14, 2021); *United States v. Fairlamb*, No. 1:21-cr-120-RCL, 2021 WL 1614821 (D. D.C. April 26, 2021). Whatever the original intentions of the legislators who passed § 231(a)(3) in 1968, the statute on its face does not regulate speech based on content. The Supreme Court recently stated, "This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock v. Clayton Cnty.*, ___ U.S. ___, 140 S. Ct. 1731, 1749 (2020). As the court in *Howard* pointed out, "a legislative restriction imposed by *legislators* with particular viewpoints or intentions is not constitutionally infirm unless the language of that legislative restriction discriminates against *those who are subject* to

the statute based on their particular viewpoint. Section 231(a)(3) does not restrict speech, nor does it punish an individual for holding a particular point of view." 2021 WL 3856290, at *8; see also *Wood*, 2021 WL 3048448, at *8 (accord).

A statute that is content-neutral on its face, such as the statute at issue here, may still be subject to strict scrutiny if "the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, Defendant has not shown that § 231(a)(3) targets speech, much less specific messages. The history of the statute, as mentioned above, shows that it has been applied to defendants across the political spectrum.

I conclude that legislative history is not relevant here, and that § 231(a)(3) does not violate the First Amendment.

### C. Fifth Amendment Due Process

Defendant asserts that § 231(a)(3) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). The court must consider "whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). Void-for-vagueness challenges are separate from overbreadth challenges. *See id.* at 20.

Here, Defendant allegedly attempted to spray police officers with bear spray while the officers were attempting to disperse protesters. This alleged conduct would fit within the type of conduct prohibited by § 231(a)(3). The statute sufficiently gives this defendant notice of the conduct it prohibits.

## II. Sufficiency of the Indictment

The indictment alleges:

> On or about August 26, 2020, in the District of Oregon, during a civil disorder, defendant KEVIN PHOMMA, knowingly committed a violent act for the intended purpose of obstructing, impeding and interfering with law enforcement officers who were lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder, and that such civil disorder in any way or degree obstructed, delayed and adversely affected commerce and the movement of any article or commodity in commerce . . . .

Defendant contends that the indictment should be dismissed because it does not provide adequate notice and does not assure that the grand jury made the required determinations. The government responds that the criminal complaint, ECF No. 1, describes Defendant's alleged conduct at around 11 p.m. on August 26, 2020, near the ICE facility on Macadam, and that police reports and surveillance video provided during discovery "clarify [Defendant's] role in deploying bear spray against the officers during the civil disorder that night." Gov't Resp. 27.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and include the "provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). "An indictment generally 'is sufficient if it sets forth the elements of the charged offense' so as to provide the defendant with fair notice of the charges against him and to ensure that the defendant is not placed in double jeopardy." *United States v. Tuan Ngoc Luong*,

13 - Opinion and Order

965 F.3d 973, 985 (9th Cir. 2020) (quoting *United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004) (further citation omitted)), *petition for cert. filed*, __ U.S.L.W. __ (U.S. May 13, 2021) (No. 20-7998). "While the indictment may be insufficient if it fails to allege an essential element of the offense, nevertheless the indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied." *United States v. Drew*, 722 F.2d 551, 552 (9th Cir.1983) (quotation marks and citations omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)); *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) ("In the Ninth Circuit '[t]he use of a "bare bones" information—that is one employing the statutory language alone—is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.'" (quoting *United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987)).

I conclude that the indictment here is sufficient. Although the indictment does not allege the specific facts of Defendant's conduct, it does track the wording of the statute. Defendant cites a Ninth Circuit decision dismissing an indictment as insufficient, but the indictment there completely failed to allege the mental state required for the offense. *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (indictment failed to allege the requisite mental state of "knowingly or willingly," instead alleging only that the defendant "unlawfully" affected commerce by the "wrongful use of force"). Here, the indictment does allege the elements of a civil disorder violation.

## CONCLUSION

Defendant's Motion to Dismiss, ECF No. 18, is DENIED.

IT IS SO ORDERED.

Dated the 15th of September, 2021.

Robert E. Jones
Senior United States District Judge

15 - Opinion and Order