```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA          CR Nos. 1:21-cr-00175-TJK-1
                                          1:21-cr-00175-TJK-2
v.                                        1:21-cr-00175-TJK-4

1-ETHAN NORDEAN                   Washington, D.C.
2-JOSEPH RANDALL BIGGS            Tuesday, May 4, 2021
4-CHARLES DONOHOE,               12:00 p.m.
                 Defendants.
- - - - - - - - - - - - - - - -x
```

_____

                 TRANSCRIPT OF STATUS CONFERENCE
          HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                 UNITED STATES DISTRICT JUDGE
_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:    Luke M. Jones, Esq.
                          Jason B.A. McCullough, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233

For the Defendants:       Nicholas D. Smith, Esq.
                          David B. Smith, Esq.
                          DAVID B. SMITH, PLLC
                          7 East 20th Street
                          Suite 4r
                          New York, NY 10003
                          (917) 902-3869

                          John D. Hull, IV, Esq.
                          HULL MCGUIRE PC
                          1420 N Street, NW
                          Washington, DC 20005
                          (202) 429-6520

                          Lisa S. Costner, Esq.
                          FEDERAL PUBLIC DEFENDERS OFFICE
                          301 North Elm Street
                          Suite 410
                          Greensboro, NC 27401
                          (336) 333-5455

Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
                          Official Court Reporter
                          U.S. Courthouse, Room 6722

1            <u>P R O C E E D I N G S</u>

2            THE DEPUTY CLERK:  We are on the record in

3    Criminal Matter 21-175, United States of America v.

4    Defendant 1, Ethan Nordean; Defendant 2, Joseph Randall

5    Biggs; Defendant 4, Charles Donohoe.

6            Present for the Government are Jason McCullough

7    and Luke Jones; present for Defendant 1 are David Smith and

8    Nicholas Smith; present for Defendant 2 is John Hull;

9    present for Defendant 4 is Lisa Costner; also present are

10   Defendant 1, Mr. Nordean; Defendant 2, Mr. Biggs; and

11   Defendant 4, Mr. Donohoe.

12           THE COURT:  All right.  Well, good afternoon to

13   everyone with us here today.  We are here for a status

14   conference in this matter.

15           I thought I would just tick through some of the

16   things that are on my to-do list to raise with the parties

17   first and then, of course, I'll hear from you all on these

18   matters and if there's anything else any party wants to

19   raise.

20           The first issue -- I see the Government filed -- I

21   think it was earlier today, actually -- a motion for a

22   protective order that is unopposed at least as to a number

23   of defendants -- or it's unopposed in general, but it would

24   resolve the issue as to a number of defendants.  I'll go --

25   I will -- obviously, as soon as we get off our proceeding

1    here today, I will grant that motion and enter that

2    protective order.  Obviously, the parties -- as I recall, it

3    does not resolve the issue as to Defendant Nordean and,

4    obviously, as the parties continue to negotiate on that

5    front, you know where to find me when you come up with an

6    order that -- if it's that order or something slightly

7    different that Mr. Nordean will agree to, we'll -- you know

8    where to find me to get me to enter it.

9           Second, I noticed counsel for Mr. Nordean filed

10   late last week what it styles -- what he styles as a notice

11   of the Government's violation of the Due Process Protections

12   Act and Local Criminal 5. -- Local Criminal Rule 5.1.  The

13   defendant doesn't make a request for any specific relief at

14   this point, but I do think it makes sense for me to order

15   the Government to respond to that.  I do think just a

16   cursory glance at the type of information that counsel for

17   Mr. Nordean has brought to my attention would appear that,

18   at a minimum, this is information that is favorable to the

19   accused and I don't want to, you know, go any further than

20   that because, obviously, that's not necessarily the end of

21   the story, but I do think the Government should respond to

22   that notice, and we can discuss -- my intention is to order

23   the Government to file a response, (inaudible) -- Thursday

24   the 29th -- and so my thought was to give the Government

25   until the 13th of this month to file a response to that.

1    And, you know, we'll -- I'll certainly read what the

2    Government files and take that under advisement as we go

3    forward.

4            The third thing -- we do have Defendant Donohoe

5    with us here today.  I did notice -- and we have Ms. Costner

6    here today representing him.  I noticed -- Ms. Costner, I

7    think you filed your motion yesterday to revoke the

8    detention order.  So we'll lay out -- my thought was to give

9    the Government some amount of time to respond to that and

10   we'll lay out a briefing schedule to complete that

11   particular issue.  My thought is to give the Government two

12   weeks to respond until the 17th; let you respond and then --

13   file any reply, maybe, by the 24th; and then by the time

14   we're all together next, it would be ripe and ready for me

15   to hear argument and rule on, but, maybe, the question will

16   be -- I want to hear from the parties on what -- when we're

17   going to come back which may drive some of that.

18           And then that is -- the last issue I have is, sort

19   of, how the parties want to deal with -- we have three of

20   you.  Eventually -- hope springs eternal -- we'll have a day

21   when we'll have all four defendants together.  And, you

22   know, I guess I took a peek at the schedule -- the briefing

23   schedule that the Circuit has entered.  And so, you know, it

24   may make sense to make our next time to come back a time

25   when we think we'll -- you'll have a ruling from the

1    Circuit.  So you -- we might build in, you know, a week

2    after that briefing schedule.

3              But in any event, that's -- those are the things I

4    wanted to discuss and the schedule going forward.  And so

5    why don't I turn it over to the Government first and then

6    I'll just hear from each defendant in order.  So I don't

7    know whether it will be Mr. Jones or Mr. McCullough, but --

8    or if there's another prosecutor here, as well.  I can't

9    tell.  But whoever wants to address those matters, please,

10   the floor is yours.

11             MR. JONES:  Thank you, Your Honor.  Luke Jones for

12   the Government.

13             The Government will certainly respond as directed

14   to Defendant Nordean's notice.  The proposed briefing

15   schedule with respect to Mr. Donohoe's filing is acceptable

16   to the Government.

17             Let me, sort of -- turning back to the detention

18   posture issues, just so everyone's on the same page and make

19   sure we're on the same page with the Court and the parties,

20   it's our understanding that the -- Defendants Biggs and

21   Nordean did file their briefing and a motion to consolidate

22   in the Circuit.  The current deadline for the Government to

23   respond is May 17th.  I'm told that may get bumped up a

24   couple days because the defendants had filed early, but we

25   don't have that date yet.  A reply brief would be, I assume,

1    a week later.  As to when the Circuit would rule, my

2    appellate colleagues advised that it's difficult to predict.

3    It could be a matter of days, but it could be up to a month.

4         As to Mr. Donohoe, as Your Honor mentioned, he

5    filed his motion yesterday, and we are amenable to that time

6    frame.

7         Mr. Rehl, although not here today, I do want to

8    note, we spoke to his counsel last night.  We had a chance

9    to speak to counsel for all four defendants to ensure we

10   were on the same page before today.  I can say that counsel

11   was waiting for his final sign-off on the pro hac vice

12   application.  As to the protective order, we had reached an

13   agreement and, accordingly, we filed that proposed order

14   this morning and appreciate Your Honor entering that.

15   Counsel for Mr. Rehl indicated that he would be filing an

16   opposition to the Government's motion regarding detention.

17   Your Honor had ordered that to be opposed or responded to

18   last week.  I did not get a date certain from defense

19   counsel as to when he intended to file that, but he did

20   indicate he would file it and with the assumption that there

21   would be a reply and argument down the road.  I know Your

22   Honor has moved the argument date to tomorrow.  We had

23   flagged that for counsel for Mr. Rehl.  I can't say for

24   certain whether he intends to appear tomorrow.  Presumably,

25   any argument on the substance of the motion should only

1    follow further briefing.  We are at the Court's pleasure in

2    terms of schedule.  And perhaps we, you know -- whether

3    offline or at a hearing tomorrow or in some other fashion,

4    we can make sure that Mr. Rehl's counsel is looped in and we

5    have a proposed path.

6             THE COURT:  Mr. Jones, just to address that one

7    issue with regard to the defendant who's not present here

8    today, I -- as you mentioned, I ordered, (inaudible) -- we

9    had -- when we were last together with him, I had laid out a

10   briefing schedule for that motion thinking that it would be

11   teed up this week for me to rule on.  He has -- as you've

12   mentioned, he has not filed an opposition.  So I, you know

13   -- we do still have the hearing tomorrow and hopefully we'll

14   be able to all get on the same schedule and discuss a

15   schedule, but given that I don't have anything from his

16   lawyer to inform me about his position, I don't expect to,

17   obviously, take that up and actually rule tomorrow because I

18   don't have his opposition.

19             So anyway, Mr. Jones, continue.

20             MR. JONES:  Understood.  And I -- a few other

21   issues to tick through, but just to finish my discussion of

22   the conversation with Mr. Rehl's attorney, as we discussed

23   with other counsel, the Government's proposal essentially in

24   terms of coming back was to ask the Court to continue a

25   status hearing for 60 days, tolling time between now and

1    then to allow for resolution of the detention issues, but

2    more importantly, for further discovery which continues

3    apace, and we can tell the Court a bit more about that.

4    Counsel for Mr. Rehl indicated that he was amenable to that.

5    I know that counsel for Mr. Donohoe and Mr. Biggs also

6    indicated that they were amenable to that.  And I think

7    Mr. Smith may take issue with it but can speak to

8    Mr. Nordean's position.  I believe his -- I believe he

9    thought that the 60-day timeline made sense in light of the

10   circumstances and which may -- which include, I think, to

11   some extent, concerns about Mr. Nordean's detention which I

12   assume Mr. Smith will raise and we're happy to try to

13   address.

14          As to discovery, just to put on the record where

15   things stand, the Government continues to provide

16   preliminary discovery.  We've produced more than 7,500 pages

17   of discovery materials.  A large portion of that is Telegram

18   messages which, as Your Honor knows, are key to the

19   Government's charges.  Additional items include videos and

20   audio files and, importantly, search warrant applications

21   and affidavits that the Government has produced so that

22   defense counsel can work toward any motions under Rule 12 to

23   suppress or to dismiss.

24          As to larger data sets, a couple things to note.

25   With respect to phone extractions and returns from email

1      account and social media search warrants, by and large,

2      we've been able to produce each defendant's items to them.

3      So for Mr. Biggs, his phone, we've been able to produce to

4      his counsel and so forth.  We are working as to some devices

5      to open them, so to speak, and, you know, once we are at

6      that point, we'll, obviously, produce that material in an

7      unscoped form.

8                  For other defendants, producing this type of

9      material, obviously, we're limited to producing scoped

10     versions of the warrant; that is, you know, information

11     that's been seized pursuant to Attachment B of these

12     warrants.  We are working diligently to complete that

13     process.  The FBI is working diligently to do so.  We have

14     proposed to counsel what we've done in other cases,

15     including in the Oath Keepers case: the possibility of, you

16     know, producing unscoped versions of these large data sets

17     to counsel if they are willing to consent to that production

18     such that each counsel could have the large data sets from

19     the other defendants.  We understand counsel are considering

20     that, which makes sense, you know?  If we are able to reach

21     that agreement, we'd be able to produce that unscoped

22     material.  Absent agreement, obviously, once we have fully

23     scoped sets of data from those search warrants, we would

24     produce that.  And just to make clear, you know, this idea

25     of sharing the unscoped material, any consent provided by

1    counsel wouldn't be taken as a waiver of any rights under

2    Rule 12 to file motions to suppress, challenge the legality

3    of the warrants, etcetera.

4         As to coming back, as I said, we propose 60 days

5    and we'd, obviously, ask for the Court to toll time for the

6    reasons stated in our earlier proceedings based on the

7    complexity of the case, the discovery issues, and the need

8    to allow counsel and the Government time to prepare toward a

9    trial.

10        I'm happy to answer any other questions.  I

11   believe I've ticked through the main items here.

12        THE COURT:  I think you have, you know?

13        Why don't I hear -- I'll just say before I hear

14   from each defense counsel, you know, if 60 days is a time

15   that at least some defendants -- and, maybe, all defendants

16   -- agree is appropriate, I do think, you know, quite

17   obviously, on the detention front, to the extent there are

18   outstanding detention issues before me with regard to

19   Mr. Rehl and Mr. Donohoe, you know, I would take those up

20   and we -- I would take those up independently of coming back

21   before 60 days.  So we can talk about how I might do that,

22   and we wouldn't necessarily -- even necessarily need all the

23   defendants present for those hearings, but I think -- I

24   guess my point is counsel shouldn't think just because we're

25   talking about 60 days -- and, maybe, 60 days is

1    reasonable -- to the extent that I have live detention

2    issues before me -- I don't have that really right now for

3    the two defendants who have appealed, but for the others,

4    you know, we'll figure out a way -- I would not -- I don't

5    think it's consistent with the rules and my obligations to

6    let that sit for 60 days.  I'm not saying the Government's

7    requesting that, but we may end up -- if the way this makes

8    sense is to set, sort of, a status for everyone 60 days out

9    and then as -- we can talk about what makes sense for --

10   here for Mr. Donohoe.  If we need to come back sooner to

11   talk about his detention, then we'll go ahead and do that.

12            Anyway, so why don't I hear -- Mr. Smith, why

13   don't I hear from you.

14            MR. NICHOLAS SMITH:  Thanks, Your Honor.

15            So on the Speedy Trial Act, we agree that tolling

16   is warranted, but we would ask the Court to break up the

17   blocks into 30 days and 30 days, after which the parties can

18   submit status reports to inform the Court on whether another

19   30 or 60 is warranted rather than starting with 60, just in

20   case there's some resolution to some of the issues before

21   then.

22            I think on the production of data from Ethan

23   Nordean's phone, it -- the Government described the issue in

24   terms of scoped and unscoped productions, and I think just

25   so that everyone's on the same page, I'll describe it, you

1    know, slightly in a different way.  My understanding is that

2    the Government is requesting that Mr. Nordean agree to

3    consensually share, I believe, all of the data from his

4    phone with the other defendants, whether or not it's

5    relevant to the case, so that the other defendants could

6    have the information before the defense -- before the

7    Government, you know, runs its search terms through the

8    phone and then produces a more relevant set.  And I think

9    the reason we objected to this in a call with the Government

10   yesterday is that we think most of the information on the

11   phone is going to be irrelevant.  That's number one.  The

12   second is this problem is arising because we understand that

13   all of the conspiracy-related evidence in the indictment has

14   come out of one device.  It's come out of Mr. Nordean's

15   phone.  And, you know, we are going to be taking the

16   position and filing a motion that the search was illegal,

17   among other reasons, because it was predicated on a crime

18   that the Government has dropped and that the Chief Judge

19   said was not based on serious evidence.  So we're going to

20   be moving to suppress that.

21        But, Your Honor, there's another issue here which

22   is the Court probably knows that even with a warrant on

23   these devices, it can take a year or more for the Government

24   to crack them and start extracting data, and our

25   understanding is the only reason we have this Telegram

1    information now is that the passcode to Mr. Nordean's phone

2    was given to agents by his wife during a search of the home.

3    The device didn't belong to Mr. Nordean's wife.  It belonged

4    to Mr. Nordean.  And I think -- it's our understanding that

5    the courts treat this issue as a consent search issue so

6    that even where there's a warrant, the matter of the

7    passcode for the phone is not a warrant issue.  It's a

8    consent issue.  So Your Honor -- so we took the position

9    with the Government that if it believes it has a legal

10   search; that this data was properly collected, the

11   Government doesn't need the consent of the defendant to

12   share that information if it's legally searched.  So we're

13   taking the position that it's an illegal search and that if

14   the Government wants to segregate the data into a relevant

15   pile and non-relevant, we requested its, you know -- its

16   search terms, its Boolean logic for how it would segregate,

17   and I think the Government's position is it doesn't want to

18   share that information with the defense, but we've offered

19   that option to the Government to --

20            THE COURT:  All right.  Well, I think that --

21   number one, I think that -- your description of it,

22   Mr. Smith, it does help make sure that we're all -- the

23   parties and I are on the same page about at least what the

24   dispute or what the negotiation is at this point.  It sounds

25   like you all -- this is still an area -- both from what you

```
1    said and what Mr. Jones said, this is still an area that the
2    parties are engaging in and there's nothing for me to decide
3    today, but, obviously, if it ripens into something where the
4    parties think they need my intervention in some way, again,
5    we -- if -- whether we set it -- set things out for 30 days
6    or 60 days or 60 days with your suggestion of an interim
7    status report, you all know where to find me if and when it
8    ripens into something where you think you need me to
9    intervene.
10                 Let's see.  Mr. Hull --
11                 Mr. Smith, are you -- is there anything further
12    you wanted to note on any of these, sort of, scheduling
13    topics or anything -- I think you ticked through them all,
14    but --
15                 MR. NICHOLAS SMITH:  No, Your Honor.  That's all.
16                 THE COURT:  All right.  Mr. Hull?
17                 MR. HULL:  Thank you, Your Honor.
18                 I talked last night with Mr. McCullough and
19    Mr. Jones fairly extensively or listened to them about
20    discovery and a speedy trial cushion, and I guess I think
21    exactly like Mr. Smith on --
22                 (Technological interruption.)
23                 THE COURT REPORTER:  Judge Kelly?
24                 MR. HULL:  -- kind of, time to, like, regroup --
25                 THE COURT REPORTER:  Oh, excuse me.
```

 1            MR. HULL:  I'm sorry?

 2            THE COURT REPORTER:  Yes, I'm sorry.  The Zoom

 3    froze.  The -- I can tell you the last thing I got.

 4            MR. HULL:  I can do it quickly.

 5            (Reporter read back.)

 6            MR. HULL:  Yeah, it's not -- I can probably

 7    shortcut this.

 8            We'd like 30 days or less on speedy trial.  I did

 9    talk with the Government last night for a fairly long time.

10    I'm not sure what we're going to do about the unscoped

11    material and how that works, and I haven't had a chance to

12    talk to Mr. Biggs about it at all, but -- so we're, you

13    know, thinking about that, but 30 days on speedy trial.

14            I can't think of any other issue.  I know that

15    Your Honor is looking at the protective order as to three of

16    the defendants.  And, you know, there was a couple of

17    amendments that were done after Mr. Biggs signed it, and I'm

18    not sure that's that important, but I note that we can all,

19    under, I guess, Paragraph 9, go to you and ask to amend the

20    protective order.  I could see that happening in this case.

21    But otherwise, you know, we agree to it with those

22    observations.

23            So that's it for me.

24            THE COURT:  All right.  Ms. Costner?

25            MS. COSTNER:  Yes, Your Honor.

 1              Your Honor, with respect to the timetable that the

 2     Court has proposed for our appeal of Magistrate Judge's --

 3     Harvey's detention order, we're fine with that schedule;

 4     that that's acceptable.

 5              As far as the discovery with the phones, I would

 6     just want an opportunity to have more of a conversation with

 7     my client.  He's still in Oklahoma.  I believe he's going to

 8     come to North Carolina, and that would be the time I, you

 9     know -- that we could sit down and I could really explain to

10     him what's going on.  I explained that to Mr. McCullough.  I

11     think that the Government knows that we'll just be in -- be

12     patient about that as I'm able to talk with Mr. Donohoe and

13     then talk to them about that.

14              And with respect to the 60 days or 30 days, given

15     our schedule for the detention matter -- and I understand

16     the Court will hear that prior to a 60-day meeting -- or I'm

17     sorry, status conference, you know, 30 days, it might be

18     good to just check in.  We would know where Mr. Donohoe is

19     at that time, you know, any conferences that I've been able

20     to have.  I would just leave that to the Court's discretion.

21              THE COURT:  And let me just circle back to

22     Mr. Smith.

23              Was -- your suggestion about the 30 days, just so

24     I understand it, was it really just -- was your suggestion

25     for me to -- for us, since we're all here together, to set a

1    next date, if you will, 60 days out but simply require at 30

2    days a -- some sort of written report letting me know, Okay,

3    put everything -- and I -- again, with the caveat that the

4    parties can always come to me with a discovery issue or

5    whatever it may be, but that there be a -- that, basically,

6    the parties, sort of, check in with a written report that

7    would just say, Things are going well; we don't have

8    anything to raise with the Court; and we -- assuming that

9    were the case -- would consent to another 30 days, so we

10   wouldn't necessarily all be together, (inaudible) -- if this

11   counts as in person -- in 30 days or -- I don't want to -- I

12   want to make sure I understood -- or were you saying, No,

13   let's just -- 30 days and all check in the way we are here

14   today?

15           MR. NICHOLAS SMITH:  Your Honor, thanks.

16           I think it's the latter approach, except that

17   instead of meeting in a hearing, the parties would submit a

18   status report in writing briefing the Court on whether there

19   will be another 30 days by consent or whether there's some

20   issue that would change the defendants' mind about tolling.

21   So -- but the idea wouldn't be to necessarily meet again in

22   30 days but submit a written report.

23           THE COURT:  Okay.  Wasn't that what -- that wasn't

24   the first option I laid out?

25           MR. NICHOLAS SMITH:  Oh.  Was it?  If that was the

 1   first option Your Honor laid out, then we agree.

 2           THE COURT:  I think it -- well, I think it was.

 3   It's just a question of clearing everyone -- so you wouldn't

 4   suggest that I clear -- we try to clear everyone's schedule

 5   for a date in 30 days, but we would try to find a date in 60

 6   days with an interim report?

 7           MR. NICHOLAS SMITH:  Correct.  And if, for some

 8   reason, the defendants believed that another 30 days are not

 9   warranted at the time of the status report, then we would

10   just inform the Court, but otherwise --

11           THE COURT:  Right.  And I -- and we would -- I

12   would scramble -- if you did that, I would just -- I would

13   bring you all in as soon as we could to discuss --

14   (inaudible.)

15           All right.  I think that's a reasonable way

16   forward, you know?

17           MR. HULL:  And, Your Honor, to -- just for the

18   record, I --

19           THE COURT:  Yeah.

20           MR. HULL:  -- would suggest that we all get back

21   together and huddle and actually have a status conference 30

22   days from today and clear our schedules.  I know that's --

23   not everything that -- not everybody wants to do that, but I

24   think it makes things more efficient for what we're doing if

25   things were clear to people quicker.  So I would like to get

 1   back together in 30 days.  At least every 30 days.

 2            THE COURT:  Well, hmm.  Thirty days would put us

 3   -- I just don't know if we're going to have enough --

 4   obviously, discovery could present -- could give us

 5   something to discuss.  So that aside, I don't know if I'm

 6   going to have enough to be able to -- enough to be able, you

 7   know -- I don't know if we'll have enough to talk about in

 8   30 days, but if you feel strongly about it -- if I have at

 9   least one defendant who feels strongly about it, then that's

10   what we'll do, and then we'll go ahead and see, and if it's

11   a short status and we don't have a lot to discuss, that's

12   perfectly fine -- (inaudible.)

13            MR. HULL:  I do, Your Honor.  I think there will

14   be an issue or two.  But I think it's, sort of, good form in

15   this case for us to keep doing that.  I'm sure there will be

16   one or two issues, especially --

17            THE COURT:  All right.

18            MR. HULL:  -- on discovery.

19            THE COURT:  All right.  So I'm looking at -- the

20   day that pops out that I think is, (inaudible) -- 30 days --

21   and it may give us some opportunity to know -- maybe, to get

22   a ruling from the Circuit -- who knows -- is June -- it's a

23   Thursday -- Thursday, June 30th [sic], at 2:00 o'clock.

24            Is the Government available at that time?

25            MR. JONES:  Yes, Your Honor.  I believe that works

1    for the Government.

2              THE COURT:  All right.  Mr. Smith?

3              MR. NICHOLAS SMITH:  Did Your Honor say June 30th?

4              THE COURT:  I'm sorry.  I'm so sorry.  June 3rd.

5              MR. JONES:  June 3rd?

6              MR. NICHOLAS SMITH:  June 3rd?

7              THE COURT:  I apologize.

8              MR. NICHOLAS SMITH:  Yeah.  Yes, June 3rd at 2:00

9    p.m. works for the -- for Mr. Nordean.

10             THE COURT:  All right.  Mr. Hull?

11             MR. HULL:  June 3rd at 2:00 p.m. is good, Your

12   Honor.  Thank you.

13             THE COURT:  All right.  And I suppose --

14   Ms. Costner?

15             MS. COSTNER:  Yes, Your Honor.  That works for us,

16   as well.

17             THE COURT:  All right.  Now, of course, I've

18   realized, as I've thrown that date out, that I haven't

19   checked with my courtroom deputy to know whether we're going

20   to be able to have the defendants with us.

21             Ms. Harris, do you -- well, let me put it this

22   way.  I know we're dealing with folks who are detained in

23   multiple places and you're not a mind reader and you don't

24   happen to know, I don't think -- you have limited

25   information about where these defendants are at this point,

1    and Mr. Donohoe may not be in the same place he is now

2    anyway.  But do you know -- do you have any information that

3    any of our defendants would not be available -- would not be

4    available -- that you know on the 3rd at 2:00?

5              THE DEPUTY CLERK:  The only one I'm concerned

6    about is Defendant 3, Mr. Rehl, because they are very

7    limited and strict with their settings.  I probably -- I

8    think the others will probably be available.  I'll reach out

9    just as soon as we're done with the hearing and reach out

10   and go ahead and try and set it, but my concern is Mr. Rehl.

11   He's the one that I continue to have problems with.

12             THE COURT:  Okay.  Problems just because it's

13   limited availability, but not particularly knowing, I mean,

14   that that day and that time would be out for him?

15             THE DEPUTY CLERK:  Yeah, I'm not sure at all

16   whether that would be available for him.

17             THE COURT:  All right.  Well, we can't account for

18   what we -- I mean, I think we can just set it, and if we

19   find that any one of our defendants is [sic] available,

20   we'll try to adjust accordingly as we have done.

21             All right.  So I don't think that really changes

22   --

23             Ms. Costner, again, I'll give the Government, in

24   your case, two weeks to respond, the 17th; and then you may

25   file a reply on the 24th, as we said.  I think we'll reach

1    out to you if -- what I'd like to do is probably resolve

2    that -- your detention issue -- your client's detention

3    issue before we come back -- (inaudible.)  So we'll reach

4    out to you to try to set that up, depending on when I get

5    the Government's response and how quickly I think I can rule

6    on that.  So that will be on a separate track that we'll

7    reach out to you on, but --

8                And so I -- if I have, then, all parties, I think,

9    agreeing to toll until June 3rd, I will go ahead and find

10   that the time between today's date and June 3rd is

11   excludable under the Speedy Trial Act because the ends of

12   justice that are served by taking such action outweigh the

13   best interests of the public and the defendant in a speedy

14   trial.  I'm doing so to give these defendants, again --

15   I'm -- well, I'm doing so, number one, in part because they

16   -- all the defendants have consented to that -- or all the

17   defendants that are with us here today; and then, also,

18   because it is -- the charges in this case and the

19   investigation are so unusual and complex that it's

20   unreasonable to expect adequate preparation for pretrial

21   proceedings within the typical time limits under the Speedy

22   Trial Act; and in particular here, we have unusually

23   voluminous discovery that, as reflected in our discussion

24   here today, the Government has to make available to the

25   defendants one way or another, and that's subject to the

1  parties' ongoing negotiations on that point.

2          All right.  I think, then, we've ticked through

3  all the things that I have here.

4          Is there anything further, Mr. Jones, you think we

5  need to address -- I need to address here today?

6          MR. JONES:  I don't believe so, Your Honor, except

7  to confirm we'll be back with you tomorrow in the matter of

8  Zachary Rehl.  Otherwise, nothing further.

9          THE COURT:  Correct.

10          Mr. Smith?

11          MR. NICHOLAS SMITH:  No, Your Honor.  Thank you.

12          THE COURT:  Okay.  Mr. Hull?

13          MR. HULL:  No, sir.

14          THE COURT:  All right.  Ms. Costner?

15          MS. COSTNER:  No, Your Honor.

16          THE COURT:  All right.  Very well, then.  We will

17  at least see everyone -- if not before in some cases, we'll

18  see everyone on June 3rd at 2:00 o'clock and we'll go from

19  there.  With that, the parties are dismissed.

20          MR. JONES:  Thank you, Your Honor.

21          (Proceedings concluded at 12:57 p.m.)

22          * * * * * * * * * * *

23          **CERTIFICATE OF OFFICIAL COURT REPORTER**

24      **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby**

25  **certify that the above and foregoing constitutes a true and**

1   accurate transcript of my stenographic notes and is a full,

2   true and complete transcript of the proceedings to the best

3   of my ability, dated this 6th day of April 2022.

4       Please note:  This hearing occurred during the COVID-19

5   pandemic and is, therefore, subject to the technological

6   limitations of court reporting remotely.

7                           /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                            Official Court Reporter
8                           United States Courthouse
                            Room 6722
9                           333 Constitution Avenue, NW
                            Washington, DC 20001

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25