UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| v. | ) ) | Case No. 1:21-cr-175-TJK |
| ETHAN NORDEAN, et al., | ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANT NORDEAN'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO IDENTIFY *BRADY* MATERIAL IN PRODUCED DISCOVERY

Defendant Nordean, through his counsel, moves the Court to direct the government to identify *Brady* material in the voluminous discovery that has been and will be produced before trial.

As this Court has recognized numerous times, "'open-file discovery does not relieve the government of its *Brady* obligations.'" *United States v. Saffarina*, 424 F. Supp. 3d 46, 85 (D.D.C. 2020) (quoting *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) (Friedman, J.)). Pursuant to the Court's inherent powers, "it [may be] appropriate to require the government to identify the *Brady* material in discovery that has been produced." *Id*. (internal quotation marks and citation omitted); *see also United States v. Blankenship*, 2015 U.S. Dist. LEXIS 76287, at *3 (S.D. W. Va. June 12, 2015) (same); *United States v. Salyer*, 2010 U.S. Dist. LEXIS 77617 (E.D. Cal. Aug. 2, 2010) (same); *United States v. Bornovsky*, 820 F.2d 575, 575 (2d Cir. 1987) ("The government did not fulfill its [*Brady*] obligation merely by providing mountains of documents to defense counsel who were left unguided. . . .").

The circumstances that warrant requiring the government to identify *Brady* are well known. In *Hsia*, for example, this Court held that "the government cannot meet its *Brady*

1

obligations by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." 24 F. Supp. 2d at 29. The Court ordered the government to identify the *Brady* material of which it was aware. *Id.*

Similarly, in *Saffarina* the government produced "millions of pages of documents" to the defense but refused to identify any *Brady* material of which it was aware. 424 F. Supp. 3d at 86. This Court ordered the government to identify the *Brady* material of which the government was or should be aware. 424 F. Supp. 3d at 90-91. The Court based its decision on the fact that the defendant was "an individual defendant who neither has the benefit of parallel civil litigation, nor access to voluntary corporate assistance to sift through the massive amounts of documents within the government's voluminous production." *Id.* at 92.

In *Blankenship*, the government produced "four million pages of discovery." Even though the government provided the defense with a "searchable, indexed, digital database of documents," the district court still ordered the government to "specifically designate any known *Brady* material as such and disclose the same to defense counsel." 2015 U.S. Dist. LEXIS 76287, at *6.

In *Salyer*, the government's massive production consisted of electronic information with multiple gigabytes and millions of pages. 2010 U.S. Dist. LEXIS 77617, at *1. Partly because the defendant had a "small defense team" and was "detained in jail pending trial," the district court ordered the government to identify the *Brady/Giglio* material in the production. *Id.* at *10.

Taken together, then, the determinative factors are: (1) an unusually voluminous discovery production; and (2) a detained defendant with a small defense team without access to resources such as that provided by D&O insurance. *E.g.*, *Saffarina*, 424 F. Supp. 3d at 90-91;

2

*Salyer*, 2010 U.S. Dist. LEXIS 77617, at *1.  The decisions show that it is still appropriate to direct the government to identify *Brady* material it is or should be aware of notwithstanding that the government provided to the defense "production logs . . .and searchable format[s]," *Saffarina*, 424 F. Supp. 3d at 83, and "index[ing], digital database[s]." *Blankenship*, 2015 U.S. Dist. LEXIS 76287, at *6.

      Here, even if all the discovery produced in *Saffarina*, *Hsia*, *Blankenship*, and *Salyer* were combined, it would be utterly dwarfed by the discovery produced in this case alone.  The government has itself described its investigation as the largest in American history in terms of the volume of evidence.  As counsel for Defendant Rehl noted in the status conference on May 19, the government's latest production alone—produced last week, less than three months before trial—contained four terabytes of data.  As counsel noted, in terms of documents, just one terabyte alone is generally estimated to contain 75 million pages.  CloudNine, eDiscovery Blog, available at: https://cloudnine.com/ediscoverydaily/electronic-discovery/ediscovery-best-practices-perspective-on-the-amount-of-data-contained-in-1-gigabyte/#:~:text=%E2%80%9CConsidering%20that%20one%20terabyte%20is,of%20four%20pages%20per%20document.  Even assuming a lawyer can review 50 documents per hour, it would take 375,000 hours to complete a one terabyte document review.  Put another way, it would take more than 185 reviewers working 2,000 hours each per year to complete the review within a year.  *Id.*  This is the government's latest discovery production alone—to say nothing of the dozens of productions made since February 2021.

      The case for directing the government to identify *Brady* of which it is or should be aware is overwhelming.  The government will respond that the defendants have not made a showing of a bad-faith effort to hide exculpatory material in large productions.  This Court has already

3

rejected the contention that a bad-faith showing is required. *Saffarina*, 424 F. Supp. 3d at 90 (citing *United States v. Agurs*, 427 U.S. 97, 110, 96 S. Ct. 2392, 2401 n.17, 49 L. Ed. 2d 342 (1976) (noting that the Supreme Court has "expressly rejected the good faith or the bad faith of the prosecutor as the controlling consideration"); *United States v. Pasha*, 797 F.3d 1122, 1141, 418 U.S. App. D.C. 258 (D.C. Cir. 2015) ("There is . . . no way around the fact that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.")); *see also Salyer*, 2010 U.S. Dist. LEXIS 77617, *7 ("Thus, if there is a non-disclosure occasioned by the massiveness of the document production to which the defense is given access, it should make no difference whether such was accompanied by good or bad faith—a non-disclosure is a non-disclosure no matter what the motivation.").

Next, the government suggested in the May 19 status conference that the defendants must first identify what categories or pieces of evidence they believe the government is withholding. That has it backwards. The rationale underlying the *Saffarina/Hsia/Blankenship/Salyer* line of cases is that in the context of cases involving massive discovery productions and small defense teams for jailed defendants, the government, with its enormous advantages in manpower and resources "is in a far better position than the defendant to know what evidence might be exculpatory and/or impeachment material." *Saffarina*, 424 F. Supp. 3d at 87.

Finally, the government will contend that it cannot "anticipate" what might constitute *Brady* to the defense. Besides being rejected in the *Saffarina/Hsia/Blankenship/Salyer* line of authority, that argument proves far too much: that the government never has any *Brady* obligation. In any case, the Local Rules of the Court make perfectly clear what constitutes *Brady* material here. In addition, given that this case is already over a year old, the government has

reviewed dozens of motions and filings made by the defendants outlining their defense theories. The government simply has to consider those in the context of the Court's very specific description of *Brady* material, which includes but is not limited to:

(1) Information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged;

(2) Information that tends to mitigate the charged offense(s) or reduce the potential penalty;

(3) Information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged;

(4) Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial; and

(5) Impeachment information, which includes but is not limited to: (i) information regarding whether any promise, reward, or inducement has been given by the government to any witness it anticipates calling in its case-in-chief; and (ii) information that identifies all pending criminal cases against, and all criminal convictions of, any such witness.

LCrR 5.1(b).

For all these reasons, the Court should direct the government to identify to the defense *Brady* material in its discovery productions it is or should reasonably be aware of.

Dated: May 19, 2022               Respectfully submitted,

                                  */s/ David B. Smith*
                                  David B. Smith (D.C. Bar No. 403068)
                                  108 N. Alfred St.
                                  Alexandria, VA 22314
                                  Phone:(703)548-8911
                                  Fax:(703)548-8935
                                  dbs@davidbsmithpllc.com

                                  Nicholas D. Smith (D.C. Bar No. 1029802)
                                  7 East 20th Street
                                  New York, NY 10003

Phone: (917) 902-3869
nds@davidbsmithpllc.com

**Certificate of Service**

I hereby certify that on the 19th day of May, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*